UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
                                        :

JAIME BEDOYA-CANO,

                      Petitioner,           :       07 Civ. 9276 (JSR)(DF)

                                        :       **REPORT AND**
     -against-                                   **RECOMMENDATION**

                                        :

UNITED STATES OF AMERICA,

                                        :

                      Respondent.
--------------------------------------------------------------X

**TO THE HONORABLE JED S. RAKOFF, U.S.D.J.:**

<h2 align="center">INTRODUCTION</h2>

      Seeking to vacate, set aside, or modify the sentence imposed by this Court, *pro se*
petitioner Jaime Bedoya-Cano ("Petitioner") petitions the Court for a writ of habeas corpus
under 28 U.S.C. § 2255.  Upon pleading guilty to Conspiracy to Distribute and Possess with
Intent to Distribute Heroin, in violation of 21 U.S.C. § 846, and Attempt to Distribute and
Possess with Intent to Distribute Heroin, in violation of 21 U.S.C. §§ 812, 841(a)(1),
841(b)(1)(A), and 846, Petitioner was sentenced to 135 months of imprisonment and five years
of supervised release, and was ordered to pay a mandatory special assessment.  He is currently
incarcerated at the Reeves Correctional Institution, in Pecos, Texas.  Respondent the United
States of America ("the Government") opposes the petition.

<h2 align="center">BACKGROUND</h2>

      On August 7, 2004, Petitioner was arrested by United States Customs agents while
attempting to pick up a package containing 2.5 kilograms of heroin that had been delivered
through the mail from Ecuador.  (*See* Memorandum of Law in Opposition to Jaime Bedoya-
Cano's Petition Pursuant to 28 U.S.C. § 2255, dated March 19, 2008 ("Def. Opp.")

(undocketed), at 4-5 (citing Presentence Investigative Report ("PSR"), at ¶¶ 15-16).)  Petitioner

was attempting to retrieve the package from Fernando Quintero, to whom he had previously

given instructions to locate an address where the package could be delivered.  *Id.*  On September

4, 2003, Petitioner was indicted along with Quintero and three other defendants for conspiracy to

distribute and possess with intent to distribute, and attempt to possess with intent to distribute,

2.5 kilograms of heroin.  (*See* Appellate Brief for Appellant Jaime Bedoya-Cano, dated Oct. 3,

2005, Appendix ("A."), at 5-8 (Indictment 03 CR 1060 (JSR)).)

### A.    Plea Proceedings

On November 14, 2003, Petitioner pleaded guilty (without a plea agreement) before the

Honorable Jed S. Rakoff, U.S.D.J., to both counts in the Indictment, exposing himself to a

120-month mandatory minimum sentence and a maximum sentence of life imprisonment.  (Def.

Opp. at 2; attached Memorandum of Law to Motion to Vacate, Set Aside, or Correct Sentence,

dated Sept. 28, 2007 ("Def. Mem."), at  4; A. at 9 (Transcript of Plea); *see also id.* at 11 (noting

that the Government had provided Petitioner with a *Pimentel* letter).)  During Petitioner's plea

allocution, he admitted that he was part of a plan to receive a package of drugs in the mail.  He

stated that his role was to pick up the package from Qunitero and deliver it to another person

named "Henry" who was going to sell the drugs.  For his part, Petitioner stated that he was to

have been paid "about two, two and a half thousand dollars."  (A. at 23.)  In addition, during the

allocution, the following exchange took place:

THE COURT:        And did you know what kind of drugs this was?

DEFENDANT:        No. They told me it was drugs.  It was drugs, yes.

THE COURT:        You knew it was narcotics, but you didn't know exactly what kind, is that it?

DEFENDANT:      No, I didn't know the exact type or amount.

THE COURT:      But you knew it was narcotics and you knew from – did you see the package?

DEFENDANT:      No, I didn't see the package.

THE COURT:      You knew it had to be a meaningful amount because they were paying you over $2,000, yes?

DEFENDANT:      Yeah, it would have to be.

The Government proffered that subsequent laboratory tests confirmed that the drug in the package was heroin in the amount of approximately 2.5 kilograms.  (*Id.* at 26.)  The Court accepted Petitioner's plea.  (*Id*. at 27.)

## B.    The Presentence Report

The PSR prepared by the Probation Office reported that Petitioner had "admitted to agents that he was aware that the package had contained drugs, and that . . . he had put in place the plans that resulted in the delivery of the package to the Bronx address.  In addition, Bedoya-Cano agreed to pay Quintero for arranging the delivery of the package to him."  (PSR at ¶ 16.)

The PSR calculated Petitioner's base offense level as 32, based upon the determination that the drug in question was 2.5 kilograms of heroin.[1]  (*Id*. at ¶ 28.)  In addition, the PSR recommended a three-level increase based upon a finding that Petitioner was a supervisor or manager of the conspiracy.[2]  (*Id*. at ¶ 31.)  The PSR noted that, while Petitioner stated that his

---

[1] Section  2D1.1(c)(4) of the Sentencing Guidelines provides a Base Offense Level of 32 for conspiracy to distribute and attempt to possess with intent to distribute one to three kilograms of heroin.

[2] Section 3B1.1(b) of the Sentencing Guidelines provides that the offense level may be increased by three levels "[i]f the defendant was a manager or supervisor (but not organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive."

role was limited to that of a "courier" (*id*. at ¶ 24), there was reason to believe that he had

"coordinated the delivery of the package" (*id*. at ¶ 31).   Specifically, the Report stated:

> While we believe that Bedoya-Cano was not an organizer or a
> leader of this conspiracy, we believe that his actions were more
> than a courier [as he had maintained].  The defendant coordinated
> the delivery of the package of heroine by asking Quintero to find
> the apartment where the package could be delivered.  The criminal
> activity involved five participants.  At the end of the conspiracy,
> the defendant was the intended recipient of the package.

(*Id*. at ¶ 31.)  This three-level increase, however, was offset by a recommended three-level

decrease based upon the PSR's finding that Petitioner had accepted responsibility for the offense.

(*Id*. at ¶ 35.)  Therefore, the total offense level was 32.  Based upon an offense level of 32 and a

criminal history category of I (first-time offender), the PSR calculated the applicable sentence

range as 121 to 151 months incarceration.  (*Id*. at p. 16.)  The PSR also noted that Petitioner

would likely be deported to Columbia at the completion of his sentence.  (*Id*. at p. 17.)

The PSR recommended a sentence of 121 months and concluded: "we believe that a

period of imprisonment at the minimum of the guideline range is sufficient to address the

sentencing objectives of punishment, deterrence, and to promote respect for the laws."  (*Id*. at

p. 17.)

### C.    Objections to the PSR and *Fatico* Hearing

The Government objected to two aspects of the PSR.  First, the Government sought a

two-level increase in Petitioner's offense level on the ground that Petitioner had been involved in

other drug offenses that would raise the drug quantity into the three-to-ten kilogram range.

(A. at 88.)  Second, the Government objected to the PSR's finding that Petitioner should receive

a three-level reduction for accepting responsibility.  (*Id*. at 31.)  Petitioner opposed both of the

Government's objections, but did not object to PSR's determination that he played a supervisory role in the conspiracy.  (*See id.* at 32.)

On May 25, 2004, the Court held a hearing pursuant to *United States v. Fatico*, 579 F.2d 707 (2d Cir. 1978).[3]  (*See id.* at 34.)  At the hearing, Quintero was the only witness to testify. Quintero testified that he had been involved in earlier dealings with Petitioner, at which time Petitioner had been introduced to him as the individual who owned the drugs that he was supposed to sell (*id*. at 43-44), and that, on another occasion, he had sold drugs and given Petitioner the money (*id*. at 48).  Quintero further testified that, when he could not pay Petitioner the money he owed him for drugs, Petitioner had instructed him to locate an address at which another delivery of drugs could be received, and made plans with him to pick up the delivery after it had been received.  (*Id*. at 46, 50-52.)

The Court, however, found Quintero's testimony insufficiently reliable to support the offense level increases sought by the Government.[4]  (*Id*. at 117-18.)

**D.    Sentencing**

Petitioner was sentenced before Judge Rakoff following a hearing before the Court on May 27, 2004.  (*See id.* at 131 (Sentencing Hearing).)  At the outset of the sentencing hearing,

---

[3] The purpose of a *Fatico* hearing is to develop evidence relevant to sentencing.  *See, e.g., United States v. Hernandez,* No. 99 Cr. 73 (JFK), 2004 U.S. Dist. LEXIS 7709, at *1 (S.D.N.Y. May 3, 2004).

[4] The Court later noted with regard to this testimony:  "[T]he fact that I didn't feel the government made out its case doesn't mean that I am not skeptical about the version that the defendant gave the probation office . . . he appears to have been a critical link in this particular distribution conspiracy."  (A. at 121.)

the Court first raised an issue concerning the validity of the plea that it had previously accepted.

The Court stated:

> There is a preliminary issue, which is whether there was a valid plea. As I thought about one of the issues raised at the *Fatico* hearing, it brought back to me the fact that Mr. Bedoya indicated that he knew that some drug was involved, but didn't know which drug or what amount it was. . . . Now, the indictment . . . charges him with unlawfully, intentionally and knowingly conspiring to distribute and possess with intent to distribute one kilogram and more of substances containing a detectable amount of heroin. It does not appear that at any point in his plea he allocated to what would seem to be an essential element of that conspiracy, namely a plan to distribute what he understood to be a kilogram or more of heroin.

(Transcript of Sentencing Hearing, dated May 27, 2004, at 3-4.)  The Court noted its concern

that the plea ran afoul of *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000).  In *Apprendi*, the

Supreme Court had held:

> Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt. . . . It is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt.

*Apprendi*, 530 U.S. at 490 (quotation marks and citations omitted).  The District Court further

identified *United States v. Thomas,* 274 F.3d 655 (2d Cir. 2001) as a case that might require

Petitioner to admit the quantity and type of drugs for his plea to be valid.  (A. at 107.)  Under

*Thomas*, "if the type and quantity of drugs involved in a charged crime may be used to impose a

sentence above the statutory maximum for an indeterminate quantity of drugs, then the type and

quantity of drugs is an element of the offense that must be charged in the indictment and

submitted to the jury."  *Thomas,* 274 F.3d at 660.

6

In response to the Court's expressed concerns, the Government took the position that it was not necessary for the defendant to know the type or quantity of the drugs to enter into the plea (A. at 101), and, after reviewing the Second Circuit's decision in *United States v. King*, 345 F3d 149, 151-52 (2d Cir. 2003), the Court accept the Government's position. *King* held that the requirement that factors related to sentencing be submitted to the jury and proved beyond a reasonable doubt applies only when the factors in question increase the penalty for a crime beyond the prescribed statutory maximum.[5]

The following exchange then took place between the Court and counsel for Petitioner:

THE COURT:    . . . I'm inclined, on the basis of King, to regard my doubts as satisfied and to proceed. But let me hear if defense counsel wants to say anything else on that aspect.

MR. SCHIOPPI:    Judge, after hearing what the Court has said and conferring with my client, he stands by the allocution and the plea he's taken.

THE COURT:    . . . So, are you in agreement that in order to plead guilty to a conspiracy to distribute one kilogram and more of heroin, your client need not allocute nor otherwise be shown as part of the plea to have known that the drug he was unlawfully distributing was heroin or that the amount he was unlawfully distributing was one kilogram or more, as long as he knew that he was distributing an unlawful drug, and that he knew it was in . . . a significant amount . . . ?

MR. SCHIOPPI:    Yes, sir.

THE COURT:    All right. So there is no disagreement among counsel, and I'm satisfied by King that the plea is okay.

(A. at 116-17.)

---

[5] In this case, the statutory maximum under 21 U.S.C. § 841(c) was a 240-month period of incarceration. Therefore, under *King*, the sentence range recommend by the PSR (121-151 months) would not run afoul of *Apprendi* because it was well below the statutory maximum.

Regarding the Petitioner's role as a supervisor of the conspiracy, Petitioner's counsel conceded that Petitioner "was the last person arrested here. He was the top of the ladder, so to speak, of the people who were arrested here, in that he initiated contact with other people." (*Id.* at 122.) Nonetheless, counsel argued that, just because Petitioner was the last to be arrested and was identified as the "top of the ladder" did not mean that he should receive a sentence at the top of the guidelines range. (*Id.*) Counsel argued:

> Definitely your Honor should consider the identification, but that alone taken outside of everything your Honor has seen . . . I don't think is tantamount to giving my client more than a minimum sentence of 121 months here. That's a substantial sentence for a first time offender in any jurisdiction . . .. [And h]e pled guilty to this Court. He, in effect, saved the trouble of this Court and the Government, proving his guilt beyond a reasonable doubt. . . . I'm asking your Honor to consider everything that your Honor has heard. I'm not asking to avoid negative things, but to take them in context . . .. And I believe, most respectfully, Judge, that your Honor should impose the minimum sentence. And I believe that the PSR report reflects what I've said substantially and what I have presented to the Court.

(*Id.* at 125-26.)

After hearing arguments from both sides, the Court stated: "My conclusion is that somewhere in the middle of the range is really what's called for here, and, therefore, the sentence of the Court is that the defendant is sentenced to 135 months, to be followed by five years of supervised release." (*Id.* at 131.)

### E.   Petitioner's First Appeal

Petitioner appealed his sentence to the Second Circuit (*see* A. at 146 (Brief for Appellant, Docket No. 04-3364-CR, dated Nov. 8, 2004)), arguing that the District Court had violated Supreme Court precedent in *Apprendi v. New Jersey*, 530 U.S. 466 (2000) when it determined

8

his offense level based on a finding that the conspiracy involved 2.5 kilograms of heroin because he never admitted this fact during the plea hearing (*see* A. at 157). Petitioner further argued that the District Court erred when it added a three-point role enhancement to his offense level because the record did not support such a finding. (*Id.* at 149.)

On March 30, 2005, the Court of Appeals found Petitioner's argument that his sentence violated *Apprendi* to be "without merit." *United States. v. Bedoya-Cano*, 124 Fed. Appx. 72, at *1 (2d Cir. 2005) (citing *United States v. King*, 345 F3d 149, 151-52 (2d Cir. 2003)). In addition, the Court concluded that "there was no error in the district court's application of a three-level supervisory role enhancement to Bedoya-Cano's Guidelines offense level." *Id.*

Nonetheless, the Court of Appeals remanded the case to the District Court "for further proceedings consistent with [the Second Circuit's] opinion in *United States v. Crosby*, 397 F.3d 103 (2005)." *Crosby* was a newly decided case that applied the Supreme Court's recent holding in *United States v. Booker*, 543 U.S. 220 (2005)). *Booker* held that the Sentencing Guidelines are not mandatory, but nonetheless must be "considered" by the sentencing court along with the other factors set forth in Section 3553(a) to arrive at a sentence that is reasonable. *See Crosby*, 397 F.3d at 111 (explaining federal sentencing law after *Booker*).[6]

On remand, Petitioner requested that the District Court re-sentence him pursuant to *Booker*. (*See* A. at 197 (Letter to the Court from Jonathan Svetkey, Esq., dated June 1, 2005);

---

[6] In addition, *Booker* reaffirmed *Apprendi*'s holding that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Crosby*, 397 F.3d at 108-109 (citing *Booker*, 543 U.S. at 244).

9

*see also* Motion Under 28 U.S.C. § 2255, dated Sept. 28, 2007 ("Pet.") (Dkt. 1), at ¶ 11).)

Petitioner's new attorney argued, *inter alia*, that the Court should reconsider and eliminate the

three-level supervisory role enhancement.  (A. at 200.)  Counsel argued that Petitioner's

involvement in the conspiracy was comparable to "minor participation" or that of a "middleman

bringing buyer and seller together" (A. at 199), and did not rise to the level of a supervisor.  The

Government opposed the motion for re-sentencing.  (*See id.* at 242 (Letter to the Court from

Harry Chernoff, Esq., dated June 8, 2005).)

On June 13, 2005, the District Court denied the motion for re-sentencing on the ground

that Petitioner's sentence would not be any different in light of *United States v. Booker*.  (A. at

274-75 (Transcript of Conference before Hon. Jed S. Rakoff, dated June 15, 2005); Pet. at ¶ 11.)

The Court noted:  "I was fully convinced then, as I am now, that the defendant played a more

serious role than anything he ever developed and that he was a sufficiently important person in

an extended narcotics distribution chain, that serious punishment even beyond the guideline's

minimum is called for."  (A. at 274.)

## F.   Petitioner's Second Appeal

Petitioner then appealed the District Court's denial of his request for re-sentencing.

(Dkt. 37.)  In his second appeal, Petitioner argued that the 135-month prison term was

unreasonable, and renewed his argument that the District Court violated *Apprendi v. New Jersey*.

(*See* Brief for Appellant, Docket No. 05-3536-CR, dated Oct. 3, 2005.)  Regarding this second

point, Petitioner urged the Court of Appeals to re-visit its previous determination that the

sentence did not violate *Apprendi* in light of a newly decided case, *United States v. Gonzalez*,

420 F.3d 111 (2d Cir. 2005).  According to Petitioner, *United States v. Gonzalez* explicitly

questioned the validity of *United States v. King*, the case upon which both the District Court and the first appellate panel had relied.  In fact, *Gonzalez* found that much of the language in *King* that could have been viewed as limiting the scope of *Apprendi* was dicta, and further observed that "developments in *Apprendi* jurisprudence suggest that the rule in that case may well reach more broadly than courts had originally understood."  *Gonzalez,* 420 F.3d at 128.  *Gonzalez* held that "drug quantity is an element that must *always* be pleaded and proved to a jury or admitted by a defendant to support conviction or sentence on an aggravated offense under § 841(b)(1)(A) or -(b)(1)(B)."  *Gonzalez*, 420 F.3d at 131 (emphasis supplied).

Despite this holding in *Gonzalez*, the Second Circuit denied Petitioner's second appeal on June 14, 2006.  *See United States v. Bedoya-Cano,* 186 Fed. Appx. 56 (2d Cir. 2005).  Without addressing the substance of Petitioner's argument under *Gonzalez*, the Court of Appeals concluded that "Bedoya-Cano waived this argument below."  *Id.* at 57.  In particular, the Court noted that, when questioned by Judge Rakoff during the plea proceedings about the validity of the plea, "Defense counsel [had] responded:  'Judge, after hearing what the Court has said and conferring with my client, he stands by his allocution and the plea he's taken.'"  *Id.* at 58.  The Court of Appeals concluded:  "[W]e hold that Bedoya-Cano has waived this argument and may not now complain that the District court sentenced him in violation of *Apprendi*."  *Id.*  In addition, the Circuit Court held that Petitioner's sentence was not unreasonable in light of the factors listed in 18 U.S.C. § 3553(a).  *Id.* at 58.

On October 16, 2006, the Supreme Court denied Petitioner's petition for a writ of certiorari.  *See Bedoya-Cano v. United States*, 127 S. Ct. 447 (2006).

G.    **The Habeas Petition**

On September 28, 2007,[7] Petitioner filed a petition seeking to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  (See Pet.)  Petitioner makes three claims in his habeas petition.  First, he claims that his trial counsel was ineffective because counsel failed to contest the finding of the PSR that he played a supervisory role in the conspiracy.  (See Pet. at ¶ 12.)  Second, Petitioner claims that his appellate counsel was ineffective because he "rel[ied] on an old interpretation of law" and did not refer to a "new ruling" (*United States v. Gonzalez*) in making the case that Petitioner's plea was invalid because he did not admit the type or quantity of drugs.  (*Id.*)  Third, Petitioner claims that the Second Circuit's decision in *Gonzalez* "corrects the misinterpretation of law applied to Plaintiff's sentence."  (*Id.*)

In response, the Government argues that Petitioner's trial counsel made a reasonable strategic choice to not contest the supervisory role enhancement (Def. Opp. at 19), and that, in any case, no prejudice resulted from counsel's choice not to argue against the enhancement (*id.* at 24); Petitioner's appellate counsel was not ineffective for not referring to *Gonzalez*, as that case was decided after the Court of Appeals decided Petitioner's appeal (*id.* at 24-25); and Petitioner cannot re-litigate his claim that *Gonzalez* invalidated his plea because this claim has already been considered and rejected by the Court of Appeals in Petitioner's second appeal, and even if he could re-litigate the claim, he has not addressed the Circuit's holding that the claim was waived (*id.* at 25).

---

[7] While the Court's docket sheet reflects a filing date of October 16, 2007, the date on the Petition is September 28, 2007.  The prison mailbox rule provides that a *pro se* prisoner's habeas petition is deemed filed on the date he gives it to prison officials for delivery to the Court.  *See Noble v. Kelly*, 246 F.3d 93, 97 (2d Cir. 2001).

For the reasons set forth below, the Court recommends that the petition be denied in the entirety.

**DISCUSSION**

I.    **APPLICABLE LEGAL STANDARDS**

28 U.S.C. § 2255 allows a convicted person held in federal custody to petition the sentencing court to vacate, set aside or correct a sentence.  A properly filed motion under Section 2255 must allege that:  (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the sentencing court was without jurisdiction to impose such sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack.  *See* 28 U.S.C. § 2255.  Accordingly, collateral relief under Section 2255 is available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'"  *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).  A Section 2255 petition cannot be used to relitigate questions that were raised and considered on direct appeal.  *United States v. Sanin*, 252 F.3d 79, 83 (2d Cir. 2001).

II.    **PETITIONER'S CLAIMS**

A.    **Ineffective Assistance of Counsel**

Petitioner makes two claims of ineffective assistance of counsel: first, that his trial counsel was ineffective for failing to contest the sentencing court's finding that Petitioner played a supervisory role in the conspiracy; and, second, that his appellate counsel was ineffective for

13

relying on "an old interpretation of law" when he argued that Petitioner's plea was invalid. Petitioner did not raise his ineffective assistance claims during his direct appeals.[8]

To prevail on a claim of ineffective assistance of counsel, a petitioner must satisfy the two-part inquiry set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  First, the petitioner must show that counsel's representation fell below "an objective standard of reasonableness" under "prevailing professional norms."  *Id.* at 687-88.  On this prong of the *Strickland* analysis, a reviewing court "'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,' bearing in mind that 'there are countless ways to provide effective assistance in any given case' and that 'even the best criminal defense attorneys would not defend a particular client in the same way.'"  *United States v. Aguirre*, 912 F.2d 555, 560 (2d Cir. 1990) (quoting *Strickland*, 466 U.S. at 689). Second, the petitioner must "affirmatively prove prejudice," demonstrating that, "but for counsel's unprofessional errors, the result of the proceeding might have been different." *Strickland*, 466 U.S. at 693-94.

### 1.    Ineffective Assistance of Trial Counsel

Petitioner claims that trial counsel was ineffective because he did not object to the PSR's recommendation of a three-level sentencing enhancement pursuant to U.S.S.G. § 3B1.1(b) for Petitioner's role as manager or supervisory of the conspiracy.  (*See* Pet. at ¶ 12.) Section 3B1.1(b) provides that a defendant's offense level may be increased by three levels "[i]f the defendant was a manager or supervisor (but not organizer or leader) and the criminal activity

---

[8] "[F]ailure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255."  *Massaro v. United States*, 538 U.S. 500, 509 (2003).

involved five or more participants or was otherwise extensive." "A defendant acts as a 'manager or supervisor' of a criminal enterprise involving at least five participants if he 'exercises some degree of control over others involved in the commission of the offense, or plays a significant role in the decision to recruit or to supervise lower-level participants." *United States v. Payne*, 63 F.3d 1200, 1212 (2d Cir. 1995) (quotations marks and citations omitted)).

Here, Petitioner argues that he was prejudiced by counsel's failure to "stress[] relevant information" from the record that would have shown that he did not have a supervisory role (Pet. Mem. at 4) and that he was in fact only a "courier" (PSR at ¶ 25). It is not clear, however, that Petitioner's suggested arguments, if made, would have persuaded the Court to reject the enhancement, as proposed by the PSR. Petitioner argues that counsel should have explained how he was introduced to Quintero, but the record shows that Petitioner was introduced to Quintero as the "owner" of drugs that Quintero was supposed to sell. (Pet. Mem. at 5.) In addition, while Petitioner argues that counsel should have pointed out that Quintero himself "stood to benefit" from selling the drugs (*id*. at 11), he nonetheless admits that he "told" Quintero to find an address where the drugs could be delivered (*id.* at 6), a fact more consistent with a supervisory role.

There was also significant additional information in the record that supported Petitioner's supervisory role. In recommending the three-level enhancement, the PSR reported that "[t]he defendant coordinated the delivery of the package of heroin by asking Quintero to find the apartment where the package could be delivered. The criminal activity involved five participants. At the end of the conspiracy, the defendant was the recipient of the package." (PSR at ¶ 31.) In fact, at the *Fatico* hearing, Quintero described in detail how Petitioner had

instructed him to find an address where the package could be delivered, and had arranged to pick up the package from him after it arrived. Under these circumstances, it appears likely that the government could have established that Petitioner exercised some degree of control over Quintero. *See, e.g., Rodriguez v. United States*, No. 04-CV-1158 (FB), 2005 U.S. Dist. LEXIS 5497, at *11 (E.D.N.Y. Apr. 4, 2005) (counsel's failure to object to leadership enhancement was not ineffective assistance where "it [was] apparent that the Government could have successfully established [the defendant's] leadership role" based on the pre-sentence report and the Government's proffer).

Instead of making potentially counter-productive arguments against the role enhancement, counsel strategically opposed the government's two requests for upward adjustments. The Government had objected to the PSR's recommendation that Petitioner receive a three-level decrease for accepting responsibility, and further argued that Petitioner should receive a two-level increase for his role in additional drug transactions that would have increased the total drug quantity. After arguing successfully that the PSR's recommendations on these points should be accepted (thereby avoiding a five-level increase in Petitioner's offense level that would have increased his minimum sentence by 59 months), Petitioner's counsel was well-positioned to argue that the remainder of the PSR's recommendations, including the imposition of a sentence near the mandatory minimum, should be adopted by the Court. Indeed, Petitioner's counsel argued strenuously for the minimum sentence in the PSR's recommended range. (*See* A. at 125-26.) On this record, there is little basis to overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 669.

16

Finally, Petitioner cannot demonstrate that he was prejudiced by his counsel's failure to object to the role enhancement. After Petitioner's first appeal, his new counsel argued on remand that the Court should reconsider that enhancement. Specifically, Petitioner's new counsel argued that Petitioner's involvement in the conspiracy was comparable to "minor participation" or that of a "middleman bringing buyer and seller together" (A. at 199), and did not rise to the level of a supervisor. The Court considered this argument but declined to alter its initial conclusion (*id*. at 197) that Petitioner was more than a mere "courier" as he had claimed. The Court stated: "I was fully convinced then, as I am now, that the defendant played a more serious role than anything he ever developed and that he was a sufficiently important person in an extended narcotics distribution chain, that serious punishment even beyond the guideline's minimum is called for." (*Id.* at 274.) The Court further described Petitioner as a participant who "was a different order of person in terms of culpability . . . from the other persons that I had sentenced in the case, a person who deserved a considerably higher sentence." (*Id.*) It is apparent from these statements that even if Petitioner's initial counsel had raised an earlier objection to the role enhancement, such an objection likely would have been overruled. In any event, the role enhancement was upheld on appeal. *See United States v. Bedoya-Cano*, 124 Fed. Appx. 72, 73 (2d Cir. 2005) (finding that "there was no error in the district court's application of a three-level supervisory role enhancement to Bedoya-Cano's Guidelines offense level."). Therefore, it cannot be said that Petitioner was prejudiced by trial counsel's initial failure to object.

## 2.    <u>Ineffective Assistance of Appellate Counsel</u>

Petitioner claims that his appellate counsel was ineffective because counsel did not refer to a "new ruling" – *United States v. Gonzalez*, 420 F.3d 111 (2005) – and instead allowed the appellate court to "rely on an old interpretation of law." (Pet. at ¶ 12.)  While apparently acknowledging that the *Gonzalez* case was decided after his first appeal, Petitioner nonetheless argues that "counsel could have requested a stay of judgment, pursuant to Rule 41(d) in the Fed. Rules of Appellate Procedure, until the *Gonzalez* . . . decision [was] held.  But because counsel was not 'on top of his game,' [Petitioner was] prejudiced by the old application of Law to [his] Sentence." (Pet. Mem. at 13.)

This claim for ineffective assistance must be rejected because it is not a violation of the "objective standard of reasonableness" when counsel fails to refer to a case that has not yet been decided.  The Second Circuit has "repeatedly held, when assessing the 'objective standard of reasonableness' component of *Strickland*, that counsel is 'not required to forecast changes or advances in the law.'" *Peace v. United States*, 253 Fed. Appx. 133, 134 (2d Cir. 2008) (holding that appellate counsel's failure to raise an A*pprendi* challenge was objectively reasonable where at the time of his direct appeal, petitioner's *Apprendi* argument was foreclosed by pre-*Gonzalez* Second Circuit case law); *see also Sellan v. Kuhlman*, 261 F.3d 303, 315 (2d Cir. 2001) (an attorney is not required to forecast changes or advances in the law); *Jameson v. Coughlin,* 22 F.3d 427, 429 (2d Cir. 1994) (appellate counsel's strategy was reasonable, based on the legal precedent existing at that time).  In sum, "the possibility of a favorable change in the law after a plea is simply one of the risks that accompanies pleas and plea agreements." *United States v.*

*Morgan*, 406 F.3d 135, 137 (2d Cir.2005).  Therefore, Petitioner's claim that appellate counsel was ineffective in failing to refer to *Gonzalez* must be rejected.

Additionally, this claim must be rejected because Petitioner was not prejudiced by counsel's failure to refer to *Gonzalez* in the course of Petitioner's first appeal.  In his second appeal, counsel *did* frame an argument based on *Gonzalez* (which, by then, had been decided), and the Court of Appeals rejected the argument on the ground that it had been waived by *trial* counsel.[9]  *See United States v. Bedoya-Cano,* 186 Fed. Appx. 56, 57 (2d Cir. 2005). Presumably, the Court of Appeals would have reached precisely the same conclusion had the issue been raised the first time that Petitioner was before that Court.  Accordingly, Petitioner has no basis for claiming that he suffered prejudice from his appellate counsel's failure to mention the *Gonzalez* case on the first appeal.

**B.    Petitioner's Claim Challenging the
Validity of His Sentence Pursuant To *Gonzalez***

In Petitioner's third claim, he argues that the Second Circuit's decision in *Gonzalez* "corrects the misinterpretation of law applied to Plaintiff's sentence."  (Pet. at ¶ 12.)  Petitioner is apparently arguing that his sentence was based upon an error of law that constitutes "'a fundamental defect which inherently results in a complete miscarriage of justice.'"  *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).  In his brief, Petitioner points out that the sentencing court relied on Second Circuit precedent in *United States v. King* to find that his plea was valid, and that the applicability of

---

[9] Petitioner does not here claim that this waiver constituted ineffective assistance of trial counsel.

19

*King* was subsequently called into question by *Gonzalez*.  Petitioner argues that, under the new

law of *Gonzalez,* his plea must be viewed as invalid.

    As noted above, however, this claim was considered and rejected by the Court of Appeals

on Petitioner's second direct appeal.  Therefore, Petitioner is procedurally barred from

relitigating this issue here.

    "It is well established that a § 2255 petition cannot be used to 'relitigate questions which

were raised and considered on direct appeal.'"  *United States v. Sanin*, 252 F.3d 79, 83 (2d Cir.

2001) (quoting *Cabrera v. United States*, 972 F.2d 23, 25 (2d Cir. 1992); *United States v. Perez*,

129 F.3d 255, 260 (2d Cir. 1997) ("A § 2255 motion may not relitigate issues that were raised

and considered on direct appeal.") (citing *Riascos-Prado v. United States*, 66 F.3d 30, 33 (2d

Cir. 1995)).  "Reconsideration is permitted only where there has been an intervening change in

the law and the new law would have exonerated a defendant had it been in force before the

conviction was affirmed on direct appeal."  *Sanin,* 252 F.3d at 83 (quoting *United States v. Chin*,

622 F.2d 1090, 1092 (2d Cir. 1980)).  Furthermore, "this Court may raise the procedural default

issue *sua sponte*."  *Earls v. United States*, No. 07 Civ. 5946 (NRB), 2007 U.S. Dist. LEXIS

73655, at *4 (S.D.N.Y. Sept. 27, 2007) (Section 2255 claim challenging validity of a sentence

was procedurally barred where it was previously raised on direct appeal).

    As described above, on his second appeal, Petitioner revisited his earlier argument that

his sentence violated *Apprendi*, but specifically contended that "the application of *Gonzalez* to

[his] case require[d] vacating the plea and remanding the matter for further proceedings."

(Appellate Brief, dated Oct. 3, 2005 at 13; *see also United States v. Bedoya-Cano,* 186 Fed.

Appx. 56, 57 (2d Cir. 2005) (noting that "Bedoya-Cano now urges that we revisit this issue in

light of our decision in *United States v. Gonzalez*").)  In response, the Court of Appeals

concluded that "Bedoyo-Cano has waived this argument and may not now complain that the

District Court sentenced him in violation of *Apprendi*."  *See United States v. Bedoya-Cano,* 186

Fed. Appx. 56, 57-58 (2d Cir. 2005) (noting that intentional waiver unlike the mere failure to

make the timely assertion of a right necessarily extinguishes a claim altogether and prevents

even plain error review).

Petitioner has not pointed to any intervening change in the law since the Court of

Appeals considered and rejected his *Gonzalez* argument on his second appeal.  Therefore,

Petitioner is procedurally barred from relitigating this *Gonzalez* argument now in a Section 2255

habeas petition.

## CONCLUSION

For the foregoing reasons, I recommend that the petition for a writ of habeas corpus be

denied in its entirety.  Further, I recommend that the Court decline to issue a certificate of

appealability because Petitioner has not "made a substantial showing of the denial of a

constitutional right."  28 U.S.C. § 2253(c)(2).

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

Procedure, the parties shall have ten (10) days from service of this Report to file written

objections.  *See also* Fed. R. Civ. P. 6.  Such objections, and any responses to objections, shall be

filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable

Jed S. Rakoff, United States Courthouse, 500 Pearl Street, Room 1340, New York, New York

10007, and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street,

Room 525, New York, New York, 10007.  Any requests for an extension of time for filing

objections must be directed to Judge Rakoff.  FAILURE TO FILE OBJECTIONS WITHIN TEN

(10) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE

APPELLATE REVIEW.  *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension*

*Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d

Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714

F.2d 234, 237-38 (2d Cir. 1983).

Dated: New York, New York
       May 29, 2008


                              Respectfully submitted,



                              _____
                              DEBRA FREEMAN
                              United States Magistrate Judge




Copies mailed to:

Mr. Jaime Bedoya-Cano
No. 51845-054
CI Reeves Federal Correctional Institution
P.O. Box 1560
Pecos, TX  79772

Harry A. Chernoff, Esq.
Assistant U.S. Attorney
One St. Andrews Plaza
New York, NY  10007